## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | | |
|---|---|---|
| **WESTERN WYVERN CAPITAL INVESTMENTS, LLC,** | § § § | |
| **Plaintiff,** | § | **Civil Action No. _____** |
| | § | |
| **v.** | § | |
| | § | **DEMAND FOR A JURY TRIAL** |
| **BANK OF AMERICA, N.A.** | § | |
| | § | |
| **Defendant.** | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Western Wyvern Capital Investments, LLC ("WWCI") hereby asserts and alleges herein causes of action for breach of contract and promissory estoppel against Bank of America, N.A. ("Bank of America"), seeking, first, equitable relief for breaches of the October 6, 2021 contract between the parties. WWCI avers it is entitled to a temporary restraining order, or, in the alternative, a preliminary injunction against Bank of America due to the bank's course of illegal conduct that has caused irreparable and substantial harm against WWCI. For example, Bank of American froze, without notice or cause, millions of dollars from WWCI's new venture capital investment fund. Violating the contract Bank of America refused in violation of its promise to provide an explanation for the

account freeze, as well violated the related provision that the bank had the mandatory obligation to provide a firm and accurate date on which WWCI could re-access the funds in a reasonably prompt manner. Bank of America's multiple violations of its contractual promise has irreparably and substantially harmed WWCI by (1) creating an unfounded cloud of suspicion over the new entrepreneurial venture by refusing to provide its contractually obligated information; (2) preventing WWCI from utilizing its current frozen funds, in particular eradicating its ability to capitalize on unique, fast-paced, and difficult to quantify lucrative investments and market opportunities; and (3) attracting more individuals who would have joined and invested in the fund by providing increased capital, which would have increased the funds' scope, depth, and the range of investment opportunities, ultimately earning hard-to-quantify additional profits.

In short, without doubt WWCI has been confronted with and continues to confront the requisite harm for injunctive relief. Its business has been stopped in its tracks and credibility unfairly tarnished with not a whisper from Bank of America of when it may resume operations, thereby putting its future existence in serious jeopardy, all of a result of a series of clear violations in the WWCI-Bank of

America contract. Second, WWCI also seeks as a final form of alternative, but incomplete relief, monetary damages.  Except where otherwise noted, all WWCI allegations are made based on personal information and belief.

## I.    THE PARTIES AND THEIR REPRESENTATIVES

1.    WWCI is a minority owned venture capital firm owned and largely operated by United States residents of Indian ethnicity. The new entrepreneurial investment fund specializes and focuses on investments in emerging technology markets, companies, and the industry and sector generally.  WWCI's principal place of business is 3000 Bayport Drive, Suite 840, Tampa, Florida 33607, located in this District.

2.    Over the course of the Fall of 2021, WWCI deposited roughly $3,120,000 dollars at issue in this case at the Bank of America branch located at Westshore Mall, also located in Tampa, Florida within this District.   As of December 2021, the current amount in the mysteriously and improperly frozen account equaled $2,119,000.  Remarkably, just weeks before the freeze Bank of America (and/or a governmental enforcement entity in collaboration with the bank) allowed WWCI to withdraw $1,001,000 of the initial $3,120,000 deposit, which was in turn used for legitimate purposes, only to engage in an unexplained

about face and place a full hold on WWCI'S money and freeze it without notice or justification. WWCI has never been served with or advised of a properly authorized warrant from a judicial officer finding probable cause to freeze or otherwise seize the account.

3.    WWCI is duly organized and incorporated under the laws of the State of Delaware, is in good standing under the laws of that State, and has been in legal existence according to the records of the office as of September 24, 2021.  However, while the principal place of business and state of incorporation may be relevant to the citizenship of a limited liability company like WWCI, the citizenship of a limited liability company turns on the citizenship of each member of the entity.

4.    Mr. Sreedhar Veeramachaneni ("Mr. Veeramachaneni") is a manager, member, and an authorized person for WWCI.  Consistent with the above, his business address is 3000 Bayport Drive, Suite 840, Tampa, Florida 33607, located in this District.  Mr. Veeramachaneni maintains his principal personal residence and domicile in this District and the State of Florida at 4327 Cove Drive, Palm Harbor, Florida 34685, and intends to remain at that residence.. In addition, Mr. Veeramachaneni has additional residential, real, and/or personal property located in this District and the State of Florida, including but not limited, to 3177 Burberry

Street, Tarpon Springs, Florida 34688; 3608 Trafalgar Way, Unit 102, Palm Harbor, Florida 34685. Other qualifying examples can be provided upon request. In addition, Mr. Veeramachaneni has registered to vote in this District for local and state-wide elections and has on a consistent basis voted in those elections.

5.    Ms. Aruna Rani Veeramachaneni ("Ms. Rani") is an authorized person for WWCI. Consistent with the above, her business address is 3000 Bayport Drive, Suite 840, Tampa, Florida 33607, located in this District. Ms. Rani maintains her principal personal residence and domicile in this District and the State of Florida located at 4327 Cove Drive, Palm Harbor, Florida 34685, and intends to remain at that residence indefinitely. In addition, Ms. Rani has registered to vote in this District and State for local and state-wide elections and has on a consistent basis voted in those elections.

6.    Ms. Vimala Veeramachaneni ("Ms. Vimala") is an authorized person for WWCI. Consistent with the above, her business address is 3000 Bayport Drive, Suite 840, Tampa, Florida 33607, located in this District. Ms. Vimala is the daughter of Mr. Veeramachaneni and resides in her personal residence and domicile located in this District and the State of Florida at 4327 Cove Drive, Palm Harbor, Florida 34685, and she intends to remain at that residence. In addition, Ms. Vimala has

registered to vote in this District and State for local and state-wide elections and has voted in those elections.

7.    Ms. Kerri Callahan ("Ms. Callahan") is an authorized person on behalf WWCI.  Consistent with the above, her business address is 3000 Bayport Drive, Suite 840, Tampa, Florida 33607, located in this District.  Ms. Callahan has her principal personal residence and domicile in this District and the State of Florida, located at 18828 Floralton Drive, Spring Hill, Florida, 34610, and she intends to remain at that residence indefinitely. In addition, Ms. Callahan has registered to vote in this District and State for local and state-wide elections and has on a regular basis voted in those elections.

8.    Mr. David M. Quish ("Mr. Quish") is an authorized person on behalf WWCI.  Consistent with the above, his business address is 3000 Bayport Drive, Suite 840, Tampa, Florida 33607, located in this District.  Mr. Quish maintains his principal personal residence and domicile in this District and the State of Florida, with the address of 6104 Marsh Trail Drive, Odessa, Florida 33556, and he intends to remain at that residence indefinitely. In addition, Mr. Quish has other residential, real, and/or personal property located in this District and the State of Florida, including but not limited to, 880 Mandalay Avenue, # N-309, Clearwater

Beach, Florida 33767 and 242 Villa Luna Lane, Lutz, Florida 33549.  In addition,

Mr. Quish has registered to vote in this District and State for local and state-wide

elections and has on a regular basis voted in those elections.

9.      Bank of America is the second largest bank in the United States,

having over $2,300,000,000 in assets under management.  Among other things, it

performs multinational investment banking services through its brokerage firm

and business line Merrill Lynch, advises high net-worth individuals in financial

investments, and functions as a financial services holding company. The bank is

headquartered in Charlotte, North Carolina and holds approximately 11% of all

American bank deposits.  Bank of America is duly organized and incorporated

under the laws of the State of Delaware.

10.      Pursuant to 28 U.S.C. § 1332, WWCI is a citizen of the state of Florida

given its members, managers, and/or associates reside and are domiciled in that

State. Bank of America is a citizen of the State of Delaware because it is

incorporated in that jurisdiction and of North Carolina because in that State it

maintains its principal place of business.  In addition, the amount in controversy

far exceeds the jurisdictional minimum of $75,000.  As explained in detail below,

this controversy involves at least $2,119,000 in frozen assets and the irreparable,

substantial, and, in the alternative, monetary damages Bank of America caused by the bank's breach of contract and violation of promissory estoppel doctrine. WWCI stands on the brink of closing its doors after opening them months before, losing  resulting in substantial lost fundraising and investment opportunities that have injured WWCI's business.  Therefore, diversity jurisdiction exists, and this Court has federal supplemental jurisdiction to hear the dispute.

## II.        VENUE & PERSONAL JURISDICTION

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions gave rise to the breach of contract claims asserted herein in this District.  WWCI took actions that gave rise to the breach of contract by performing by raising funds for the new venture capital endeavor in this District and depositing the resulting roughly $3,120,000 in funds in the Westshore Mall branch of Bank of America located in this District.  That branch ultimately effectuated and maintained the freeze on the account, without providing an explanation or identifying a date WWCI could re-access the accounts, constituting conduct or omission that resulted in the breaches of the relevant contract and violation of the promissory estoppel doctrine that give rise to this suit.

11.     As alleged below, the State of Florida has personal jurisdiction over Bank of America because the bank has sufficient minimum contacts with the State. The bank personally availed itself of the right to do business in this State generally through the operation of its banking network in a general and a speific way and specifically with regard to the events recounted below that gives rise to the present causes of action.

### III.     FACTUAL BACKGROUND

12.     WWCI is a new entrepreneurial investment fund focused on emerging technology markets, companies, and the industry generally.  WWCI organized as limited liability corporation on October 4, 2021, for the express purpose of operating in this line of business in Florida.  That very month, the WWCI started soliciting and obtaining investments and initiated a round of capital raising for the new venture.  From various sources, WWCI collected a highly successful sum of $3,120,000.00. WWCI raised the funds, and intended to raise additional funds in the near future, for the purpose of making investments in other opportunities and companies.

13.     Another important objective to the capital raise was to create a marketing fund for the purpose of attracting additional investors to WWCI who

would invest their own money into WWCI, thereby leveraging the firm's ability to expand its investment portfolio on a diversified basis, to make additional securities purchases in existing businesses to increase its ownership interests, and to enhance the firms' brand and profile.

14.    On October 6, 2021, WWCI and Bank of America executed a contract implicating and concerning the deposit of the roughly $3,120,000 in funds over the Fall of 2021 into the bank location and provided the terms and conditions applicable to the parties banking relationship. As relevant here, the plain language of the contract provides that *Bank of America possessed an obligation* to promptly provide notice to an account holder if its account had been frozen and shortly thereafter provide detailed information concerning the reasons for the event. Specifically, the agreement provided that "**if we put a hold on your deposit**, *we'll let you know the hold reason and when your funds will be available.*  This is typically done at the time of deposit but may also be mailed later.  Deposits greater than $5,525 and checks deposited within the first 30 days of the account opening may be held longer." 10/6/21 Agreement at p. 5 (bolded emphasis at first and italicization added).

15.     As stated above, over the course of October 2021, WWCI deposited roughly $3,120,000.00 dollars in the Bank of America located at the Westshore Mall in Tampa, Florida. On October 18, 2021, less than weeks before their entire account was frozen, WWCI withdrew approximately $1,000,000 of the capital that it had raised to deploy for various investment opportunities and business-related expenses, without objection from Bank of America or a law enforcement agency

16.     Thereafter, and by no later than October 29, 2021, WWCI became aware that Bank of America had frozen WWCI's account.

17.     Pursuant to the parties' agreement, upon the freezing of WWCI's bank account, Bank of America became obligated to "let the [WWCI] know the hold reason and when [the] funds will be available" in a prompt and reasonable manner. 10/6/21 Agreement at p. 5.

18.     ***Over two months have elapsed*** since Bank of America froze the WWCI account, and it has yet to provide WWCI a scintilla of information that would justify the freeze, even though it is more than reasonable to infer that Bank of America has this information within its possession.  Representatives for WWCI have exercised diligence and made multiple inquires to bank officials, including

transmitting a formal demand letter from its legal counsel to Bank of America on or about December 15, 2021, but to no avail.

19.    As of the filing of this Original Complaint, Bank of Americas has refused and is highly likely to continue to refuse to respond to WWCI's requests for information, including the written demand letter and its counsel's phone calls concerning the bank's obvious breaches of contract (and possible collaboration with government actors absent a bona fide warrant in violation of the Fourth Amendment of the Constitution).

20.    In short, Bank of America has provided nothing.  It has opted for a high-handed attitude of ignoring a minority owned business with no history of illicit activities and their entirely reasonable requests for information that the bank itself controls and is obligated to provide under the contract.  For these reasons, Bank of America materially and totally breach of the agreement and its obligation to provide notice and information on the reasons for the WWCI's account freeze on a reasonably prompt basis.  10/6/21 Agreement at p. 5.

21.    In addition, in the roughly two and a half months since  the freezing of WWCI's account, Bank of America has utterly failed to provide a firm and concrete date concerning when the frozen and seized funds would be available for

use by WWCI, as the bank is required to do under the October 6, 2021 agreement. Contrary to their contractual obligations, bank representatives have offered only vague estimates couched in uncertain and vague language that cloaked  and lacking in any degree of confidence or assurance.  Indeed, a Bank of America representative recognized on November 24, 2021, *almost one month in breach of the provision requiring disclosure of a firm deadline for unfreezing the account,* that it "still . . . ha[s] *no new updates* on when we will have the funds unfrozen" and represented that "[r]ight now it *looks* like the date to *possibly* have the hold released" until January 24, 2022. 10/6/21 Agreement at p. 5 (emphasis added).  No clearer evidence of a breach is needed.

22.    In fact, a Bank of America employee responsible for the WWCI account investigated the matter further and admitted to possessing no information beyond the speculative January 24, 2022 release date— "I couldn't find out more information than this."  In other words, the bank employee confirmed she was either unable to obtain or prevented from obtaining such information that she and her superiors are obligated to disclose. In light of Bank of America's continuous silence, failure to provide any information concerning the basis for the WWCI account freeze, and refusal to disclose a modicum of information about a firm and

specific date for the unfreezing of the account, Bank of America has materially and totally breached the October 6, 2021 agreement as to each provision and in its entirety.   For similar reasons, it has violated the doctrine of promissory estoppel.

## IV.    EQUITABLE AND MONETARY REMEDIES

23.    The unexplained freezing of WWCI's Bank America account and related refusal to provide information concerning when WWCI would regain access has created a commercial taint over the company that has caused and will continue to cause irreparable and substantial harm that must be promptly remedied. Indeed, based on information and belief, none of the roughly $3,120,000 deposited by WWCI in the first instance came directly, indirectly, or otherwise was derived from illegal or illicit activity that would give rise to the level of probable law cause required for a law enforcement agency (such as the Department of Justice or the Treasury Department) to obtain a warrant and collaborate with Bank of America to freeze WWCI's accounts indefinitely.

24.    As a result, the public freezing of the account at Bank of America and the bank's subsequent refusal to provide firm, non-ambiguous, and accurate information about when WWCI will re-obtain access to its primary corporate account has cast an improper cloud of impropriety over WWCI that has effectively and substantially harmed the going-forward enterprise value because the failure

to know and disseminate that information has substantially reduced, if not
destroyed, potential investors' desire to join or invest in the WWCI venture. With
WWCI initial round of fund-raising resulttingin an unexplained freezing of its
primary banking account and no specific date given for the funds' release, it is
more than reasonable to infer that the market now questions and has reacted
negatively to WWCI and, as a matter of common sense and financial theory,
created a reduction in demand for in investments in WWCI.   Under these
circumstances, it is difficult to imagine a  reasonable investor investing money in
WWCI.  Indeed, on information and belief, the deafening silence emanating from
Bank of America has led market participants to believe that WWCI had in fact
engaged in illegal business practices of some fashion worthy of the draconian
penalties it received, even though no such practice was identified, WWCI denies
the false insinuations of impropriety, and neither Bank of America or a law
enforcement agency has not publicly disclosed any proof or a warrant.[1]

---

[1] In addition, on information and belief, to WWCI's knowledge all applicable taxes
to the Internal Revenue Service were paid on the deposited funds and, therefore,
could not serve as a reasonable basis to collaborate with Bank of America to freeze
WWCI's bona fide funds and compel WWCI to bring an administrative action in
pro-governmental administrative tax court.  Indeed, on information and belief, the

25.     With no access to capital and no explanation for what transpired WWCI's brand new venture capital fund once rosy prospects came crashing to a halt.  WWCI remains unable to explain to investors the current hold on its funds, has missed out on time-sensitive business investment opportunities, and lost potential new investment capital, most likely irrevocably and substantially tainting the WWCI forever in the minds of investors.  For these reasons and the reasons discussed above, WWCI maintains entitlement and intends to seek a temporary restraining order compelling Bank of America to live up to its obligations under the October agreement. In particular, the Court should issue a temporary restraining order should requiring Bank of America to provide WWCI the benefit of its bargain: that it remediate its contractual breaches with fulsome and prompt disclosures in accordance with the contract and provide disclosures that exonerate WWCI and remove the cloud of impropriety,  explain their errors and poor judgment that resulted in irrevocable violations of the law, and why and how they occurred, their decision not to provide notice, in addition to other equitable relief.

26.     The members, manages, and authorized representatives of WWCI

---

IRS provided no notice of allegations or served warrants on the frozen funds in the account.

have no intention to spend or utilize the deposited money in connection with illegal activities or to conduct improper business operations of the type that would remotely justify a local, state, or federal law enforcement agency obtaining a court order or notice directing Bank of America to freeze, seize, and transfer the money to another entity, most plausibly a governmental entity at some unspecified point in the distant future. To the contrary, the money represented the legitimate fruits of a group of predominantly minority investors and their community's hard-earned financial success accumulated over years of substantial work and difficult in the face of fierce competition from strong competitors.  In contrast, no law enforcement agency or Bank of America on its behalf has presented WWCI a warrant stating sufficient and reliable probable cause in conformance with the Fourth Amendment to otherwise seize their legitimate and bona fide hard fought succuss in this country.

27.    In sum, WWCI has suffered irreparable and substantial harm because of Bank of America's breach of contract and the doctrine of promissory estoppel, alone and in combination, destroyed its ability to raise further capital based on the unjustified cloud looming over the investment fund based on false allegations of impropriety.  In addition, WWCI has and will suffer irreparable and substantial

harm due to (1) Bank of America preventing the use the frozen marketing funds at planned capital funding raises to bolster and grow its brand name recognition effectively destroying the venture capital fund; (2) to inability of the millions of dollars in the frozen account to execute WWCI's proprietary trading strategies to attract additional investors, raise further capital, and to accrue and increase substantial and difficult to calculate future profits; and (3) to use the marketing funds to make investment in current companies, future companies, and other investments for the same purposes as item (2).

28.     In the alternative to WWCI's equitable claims for relief, Bank of America's breaches of the October 6 contract caused WWCI to suffer financial injuries.  Bank of America prevented WWCI from realizing the ultimate purpose of the agreement and the benefit of the bargain struck. Specifically, WWCI is entitled to general, actual, incidental, and consequential damages attributable to the contractual breaches, including lost capital raising opportunities, the funds obtained from those opportunities, and lost profits from the investments that would have been made but-for the improper taint placed on WWCI funds due to the breaches, invalid seizing of the account, and refusal to provide a re-access date.

29.    Bank of America's breach of contract has caused substantial and irreparable harm to WWCI entitling it to various forms of equitable relief and monetary relief.   Bank of America's breaches of contract and violation of the doctrine of promissory estoppel have substantially, if not completely, destroyed the forward- and, in the alternative, backward-looking business valuation of WWCI.

30.    For similar reasons, WWCI is entitled to a preliminary injunction with analogous measures of relief.

## V.    CLAIMS FOR RELIEF

### Count I: Breach of Contract Statement of Reasons Provision

31.    As discussed above, the October 6, 2021 agreement constitutes an enforceable contract.  WWCI is a property party to bring a breach of contract action because it is the express or implied signatory of the agreement. During the duration of the contract, WWCI performed its obligations under the agreement, tendered performance or was excused from its contractual obligations.

32.    Bank of America breached the provision of the October 6, 2021 agreement that obligated it to provide WWCI notice and the reason that it had frozen its account in a prompt manner. 10/6/21 Agreement at p. 5.  Since the

account was frozen no later than that month, representatives for WWCI made multiple inquires to bank officials and transmitted a formal demand letter from legal counsel to Bank of America on or about December 15, 2021.  As of the filing of this Original Complaint, the bank has refused to respond to WWCI's formal demand letter or in writing or return counsel's phone call concerning the same subject. Nor has Bank of America responded to inquiries by WWCI.  In short, Bank of America has provided none of the contractually required information and has disregarded WWCI's reasonable requests for information that the bank itself controls.  For these reasons, Bank of America materially and totally breach of the agreement's obligation to provide information concerning the reasons for the WWCI's account freeze on a reasonably prompt basis.  10/6/21 Agreement at p. 5.

33.     As a result of this breach, WWCI suffered irreparable and substantial harm because it inexplicably had frozen $2,119,000 in capital raised as a marketing fund to engage in other fundraising and/or to use the money to make investments in other business ventures. Undermining any notion that the frozen funds constitute ill-gotten gains, in the weeks before the freeze WWCI withdraw slightly over $1,000,000 from the account to put to legitimate uses with no objection from Bank of America (or a governmental agency working in collaboration thereto).

34.     In addition, WWCI has a substantial likelihood of prevailing on the merits of the claim. As such, WWCI has the right to seek a temporary restraining order and/or a preliminary injunction and obtain an order and award on the terms and conditions outlined above.

35.     Bank of America's breach of contract has caused overwhelming devastation, if not complete destruction, of the value of the forward-looking valuation of WWCI. The decision to freeze with notice WWCI's roughly $2,119,000 barred the return of WWCI's deposits for use in other endeavors and prohibited the venture capital firm from accessing the deposited marketing funds for the purpose of planned future rounds of capital fundraising to expand the portfolio and make greater investments in companies in which they had make initial investments.

36.     As demonstrated above, WWCI has a high likelihood of succeeding on its claim.  In addition, WWCI has no need to post security for a request for a temporary restraining order or similar equitable relief because it has already completed its contractual obligation by placing the funds in the Bank of America account and none remain outstanding.  In addition, the over $2 million dollars

remains in the Bank of America account to cover any inconceivable security. Under these circumstances, Bank of America needs no security.

37.     In the alternative, as a result of the breach of this provision, WWCI suffered general, actual, incidental, and consequential damages. The decision to freeze WWCI's $2,119,000 barred the return of WWCI's deposits for use in other endeavors and prohibited the venture capital firm from accessing the deposited marketing funds for the purpose of planned future rounds of capital fundraising that would have raised additional to expand the portfolio with new investment and to make greater investments in companies in which they had already made initial investments. For all these reasons, in the alternative, WWCI suffered damages in the form of lost profits.

**Count II: Breach of Contract Based on Refusal to Provide of Firm Date for Unfreezing of Account**

38.     As alleged above, by no later than October 29, 2021, Bank of America had breached its obligation to inform WWCI with specific information about the date it would be able to access its bank account. _Pursuant to the parties' agreement, upon the freezing of WWCI's bank account, Bank of America became

obligated to "let the [WWCI] know the hold reason and when [the] funds will be available" in a prompt and reasonable manner. 10/6/21 Agreement at p. 5.

39.     However, *over two months have transpired* since Bank of America froze the WWCI account, and it has yet to provide WWCI a modicum of information that would justify the freeze, even though it is more reasonable to believe that Bank of America has this information within its possession and refuses to share it. Representatives for WWCI and its counsel have exercised diligence and made multiple inquires to bank officials, including transmitting a formal demand letter from legal counsel on or about December 15, 2021. The bank's responses have provided incorrect information shrouded in ambiguity.

40.     As of the filing of this Original Complaint, Bank of Americas has stonewalled all requests and is highly likely to continue to stonewall and refuse to respond to WWCI's requests for information, including a firm date on which it can access its accounts (and the bank's possible collaboration with government actors absent a bona fide warrant in violation of the Fourth Amendment of the Constitution).  In short, Bank of America has woefully fallen short and breached this contractual provision too.  As explained above, for these reasons, Bank of America materially and totally breached the agreement and its obligation to

provide accurate and firm information concerning when the freeze of WWCI's account freeze would lift on a reasonably prompt basis.  10/6/21 Agreement at p. 5.

41.     In addition, in the roughly two and a half months subsequent to the freezing of WWCI's account, Bank of America has completely failed to provide a firm and concrete date concerning when the frozen and seized funds would be available for use by WWCI, as the bank is required to under the October 6, 2021 agreement. Contrary to their contractual obligations, bank representatives have offered only vague estimates couched in uncertain and mealy-mouthed language that lack any degree of confidence or assurance.  Indeed, a Bank of America representative recognized on November 24, 2021, *almost one month in breach of the provision requiring disclosure of a firm deadline for unfreezing the account,* that it "still . . . ha[s] *no new updates* on when we will have the funds unfrozen" and represented that "[r]ight now it *looks* like the date to *possibly* have the hold released" until January 24, 2022. 10/6/21 Agreement at p. 5.

## Count III: Promissory Estoppel

42.     As alleged above, Bank of America promised that if the bank placed a hold on or froze WWCI's marketing funds account, "we'll let you know the hold

reason and when your funds will be available." 10/6/21 Agreement p. 5. It is reasonable to infer that Bank of America knew or should have reasonably expected to know would induce WWCI to deposit its fundraising proceeds with the bank, and that it did so in part. Similarly, WWCI elected to invest their funds from their capital fund raising with Bank of America rather than another bank in part in reliance on Bank of America's disclosure obligations.

43.     As alleged above, Bank of America breached their disclosure promises that WWCI would receive reasonable notice if funds from its account were frozen, the reason why, and the anticipated release date of the funds. As alleged above, in the event its funds became frozen, it was critical for WWCI to promptly know the reasons for the account freeze, the reason(s) why, and a firm release date. If it had known that Bank of America would be able to freeze funds without notice and reason for the freeze for an indefinite time period, WWCI would have certainly banked with another bank. Accordingly, WWCI detrimentally relied upon the terms and conditions provided by Bank of America when it agreed to open a new account for the capital raise and have significant amount of funds deposited to the account.

44.     For the reasons explained above, injustice can only be avoided if Bank of America discloses the information it was contractually obligated to disclosed almost two months ago.  Rather, it stands in silence content to allow a newly formed minority venture capital firm to have its future business prospects ruined. For these reasons, WWCI is entitled to a temporary restraining order or, in the alternative, a preliminary injunction.

## VI.     DEMAND FOR JURY TRIAL

43.     WWCI hereby demands a trial by jury on all issues of fact to which it is entitled to a jury trial in this action.

## VII.     PRAYER

44.     For all the foregoing reasons, WWCI requests the Court enter the judgment in its favor on the causes of action alleged above against Bank of America and award it the following relief in the first instance or in the alternative:

A.     A temporary restraining order requiring that within no more than two (2) business days that Bank of America provide the reason it or any other person or entity placed the hold or freeze on the WWCI bank account at issue.

B.     A temporary restraining order requiring that within no more than five (5) business days that Bank of America provide a firm

and accurate date when WWCI's funds will be unfrozen and available for use.

C.     A preliminary injunction ordering that within no more than two (2) business days that Bank of America provide the reason it or any other person or entity placed the hold or freeze on the WWCI bank account at issue.

D.     A preliminary injunction order requiring that within no more than five (5) business days that Bank of America provide a firm and accurate date when WWCI's funds will be unfrozen and available for use.

E.     Attorney's fees and costs.

F.     In the alternative, monetary damages in the form described above, plus interest.

G.     Attorney's fees and costs.

H.     Pre and post judgment interest

January 24, 2022                    Respectfully submitted,

                                    **KENNY NACHWALTER, P.A.**

                                    *Jeffrey T. Foreman*_____
                                    Jeffrey T. Foreman, Esq.
                                    Florida Bar No. 612200
                                    jtf@knpa.com
                                    Christina Himmell, Esq.
                                    chimmel@knpa.com
                                    Florida Bar No. 111549
                                    1441 Brickell Ave., Suite 1100
                                    Miami, Florida 33131
                                    Telephone: (305) 373-1000
                                    Facsimile: (305) 372 1861

                                    **MAYER LLP**

                                    Wade L. McClure, Esq.
                                    Tex. Bar No. 13428700
                                    wmclure@mayerllp.com
                                    Trent Rexing, Esq.
                                    Tex. Bar No. 24079197
                                    trexing@mayerllp.com
                                    Jason C. McKenney, Esq.
                                    Tex. Bar No. 24070245
                                    jmckenney@mayerllp.com
                                    750 N. Saint Paul Street, Suite 700
                                    Dallas, Texas 75201
                                    Telephone: (214) 379-6900
                                    Facsimile: (214) 214-6939
                                    *(Motions for Special Appearance for*
                                    *Mayer LLP Attorneys to Follow*
                                    *Immediately)*
                                    ***ATTORNEYS FOR PLAINTIFF***
                                    ***WESTERN WYVERN CAPITAL***
                                    ***INVESTMENTS LLC***

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey T. Foreman, hereby certify that a copy of the foregoing Original Complaint has or will be served on Bank of America N.A.'s registered agent for the service of process in accordance with the Federal Rules of Civil Procedure and the local rules of the Middle District of Florida, Tampa Division, in addition to filing the Original Complaint on ECF.

*Jeffrey T. Foreman*

Jeffrey T. Foreman, Esq.
